## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 18 2017, 9:13 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

H. Samuel Ansell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Umesh Kaushal,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 18, 2017<br><br>Court of Appeals Case No.<br>49A04-1612-CR-2862<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Sheila Carlisle, Judge<br><br>The Honorable Stanley E. Kroh, Magistrate<br><br>Trial Court Cause No.<br>49G03-1508-F4-28287 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Umesh Kaushal (Kaushal), appeals the trial court's denial of his motion to withdraw his guilty plea to child molesting, a Level 4 felony, Ind. Code § 35-42-4-3(b).

We affirm.

# ISSUE

Kaushal raises two issues on appeal, which we consolidate and restate as the following issue: Whether the trial court abused its discretion by denying Kaushal's motion to withdraw his guilty plea.

# FACTS AND PROCEDURAL HISTORY

Kaushal, a citizen of India, has lived in the United States for nearly a decade and has a Green Card. On August 11, 2015, the State filed an Information, charging Kaushal with child molesting as a Level 4 felony. The State alleged that Kaushal had fondled his thirteen-year-old stepdaughter's breast. Shortly after his arrest, Kaushal posted bond and retained an attorney. Kaushal, who owns and operates several convenience stores in Indianapolis, Marion County, Indiana, made it clear to his attorney that his priority was to avoid any amount of incarceration so that he could continue to run his businesses and care for his mother. Given Kaushal's insistence against imprisonment, along with his professional opinion that Kaushal was not likely to succeed at trial, Kaushal's attorney focused on negotiating a deal with the State.

[5] On May 4, 2016, Kaushal entered into a plea agreement with the State, pursuant to which he agreed to plead guilty to the child molesting offense. The agreement provided that Kaushal would receive a four-year sentence, with a one-year cap on executed time and with placement for the executed time to be determined by the trial court. However, after conferring with his attorney and realizing that he could be confined for a portion of his sentence, Kaushal withdrew from the plea agreement.

[6] On June 29, 2016, Kaushal entered into another plea agreement with the State, pursuant to which he again agreed to plead guilty to the offense of child molesting as a Level 4 felony. In exchange, Kaushal would receive a four-year suspended sentence, of which three years would be served on probation with a condition of home detention and one year on non-reporting probation. On June 30, 2016, the trial court conducted a hearing on Kaushal's guilty plea. The trial court advised Kaushal of the implications of pleading guilty, including his obligation to comply with the Sex and Violent Offender Registry; his waiver of his right to appeal his conviction and/or sentence; and his waiver of certain constitutional rights, such as the right to a trial by jury and the right to confront and cross-examine witnesses. These warnings were also included in the written plea agreement, and Kaushal initialed next to each one to affirm his understanding. Also, among the written warnings was an advisement that, as a non-citizen, Kaushal could face deportation, denial of re-entry, prohibition of citizenship, or loss of immigration benefits as a result of the conviction. After questioning Kaushal, the trial court found that his guilty plea was made

knowingly and voluntarily, and Kaushal agreed that there was a factual basis to support his conviction and that he was guilty of committing the charged offense. Accordingly, the trial court accepted the plea agreement and entered a judgment of conviction for child molesting as a Level 4 felony.

[7] According to Kaushal, on July 1, 2016, he met with an attorney who focuses on immigration matters and learned that, as a result of his conviction for child molesting, he was likely to be immediately "picked up" by immigration officials. (Tr. Vol. II, p. 30). Thus, on July 21, 2016, Kaushal filed a Verified Motion to Withdraw Plea of Guilty. Kaushal argued that "[o]utside of a vague advisement that the conviction may have immigration consequences, [he] was not advised of potential immigration consequences and would not have pled guilty to the charged crime had he known it would subject him to automatic detention, revocation of his permanent resident status, and certain deportation." (Appellant's App. Vol. II, p. 16). Kaushal further stated that he pled guilty "in order to avoid prison without having knowledge that his ability to legally reside in the United States would end. Kaushal owns several businesses and considers the United States to be his home. Although he has [pled] guilty, Kaushal maintains his innocence and wishes to proceed to trial." (Appellant's App. Vol. II, p. 16). Kaushal added that withdrawing the plea would not prejudice the State because the case could still proceed to trial, and he insisted that withdrawal was necessary to correct a manifest injustice.

[8]     On August 5, 2016, and September 9, 2016, the trial court held hearings on Kaushal's motion to withdraw his guilty plea.[1] Kaushal testified that his attorney never discussed the immigration consequences in urging Kaushal to plead guilty. Yet, in response to another question about conversations with his attorney regarding his Green Card, Kaushal also stated, "I think I'm not going to be ever U.S. citizen, or I'm never going to be deported after, like—in that quick until I—I just find immigration stuff." (Tr. Vol. II, p. 28). Kaushal clarified that, while he understood there would be "a hard road after" pleading guilty, he did not realize "that it's going to be that hard—[that he would get] deported that quick." (Tr. Vol. II, p. 29). On the other hand, Kaushal's attorney testified that he went through each paragraph of the plea agreement with Kaushal, including the paragraph regarding possible immigration consequences, and Kaushal did not have any questions as to what he was signing. Moreover, Kaushal's attorney testified that Kaushal had informed him that he was contemporaneously conferring with immigration attorneys. Although Kaushal's attorney stated that he does not practice immigration law, he specifically told Kaushal that his Green Card would not be renewed prior to Kaushal signing the plea agreement.

[9]     On November 7, 2016, the trial court issued an Order Denying Verified Motion to Withdraw Guilty Plea. The trial court determined that even though the State

---

[1] By this time, Kaushal had retained new representation. In this decision, references to Kaushal's attorney denotes his former attorney, who negotiated the plea agreement.

had conceded that Kaushal's attorney ineffectively advised Kaushal on the immigration consequences of pleading guilty, Kaushal failed to establish that he was prejudiced by his attorney's advice. On December 2, 2016, Kaushal filed a motion to correct error, which the trial court denied on December 15, 2016.

On December 21, 2016, Kaushal filed his Notice of Appeal. On January 6, 2017, Kaushal filed a motion to stay the proceedings pending appeal. Kaushal argued that "[u]pon the imposition of a sentence, [he] will be subject to mandatory detention and removal by Immigration and Customs Enforcement which, for all practical purposes, will result in the complete denial of his right to pursue the appellate review, afforded to him by statute, of the trial court's denial of his motion to withdraw his guilty plea prior to sentencing." (Appellant's App. Vol. II, p. 33). This, according to Kaushal, "would cause irreparable harm." (Appellant's App. Vol. II, p. 33). On January 10, 2017, the trial court granted Kaushal's motion to stay and vacated the sentencing hearing pending appellate review. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

Indiana Code section 35-35-1-4(b) governs the withdrawal of guilty pleas where such motions are filed after the plea has been entered but prior to sentencing. This statute provides that, upon a written and verified motion to withdraw a guilty plea, the trial court may allow withdrawal "for any fair and just reason unless the state has been substantially prejudiced by reliance upon the defendant's plea." I.C. § 35-35-1-4(b). This decision by the trial court is subject

to review only for an abuse of discretion. I.C. § 35-35-1-4(b). "However, the court shall allow the defendant to withdraw his plea of guilty, or guilty but mentally ill at the time of the crime, whenever the defendant proves that withdrawal of the plea is necessary to correct a manifest injustice." I.C. § 35-35-1-4(b). In other words, the trial court is required to grant a motion to withdraw a guilty plea prior to sentencing

> "only if the defendant proves that withdrawal of the plea 'is necessary to correct a manifest injustice.' The court must *deny* a motion to withdraw a guilty plea if the withdrawal would result in substantial prejudice to the State. Except under these polar circumstances, disposition of the petition is at the discretion of the trial court."

*Craig v. State*, 883 N.E.2d 218, 221 (Ind. Ct. App. 2008) (quoting *Weatherford v. State*, 697 N.E.2d 32, 34 (Ind. 1998)).

[12] "A trial court's ruling on a motion to withdraw a guilty plea 'arrives in this [c]ourt with a presumption in favor of the ruling.'" *Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001) (quoting *Coomer v. State*, 652 N.E.2d 60, 62 (Ind. 1995)). "We will not disturb the court's ruling where it was based on conflicting evidence." *McGraw v. State*, 938 N.E.2d 1218, 1220 (Ind. Ct. App. 2010), *trans. denied*. Rather, unless the trial court has abused its discretion in denying a motion to withdraw a guilty plea, we will uphold its decision. *Centers v. State*, 501 N.E.2d 415, 419 (Ind. 1986). Kaushal bears the burden of establishing the grounds for relief by a preponderance of the evidence. I.C. § 35-35-1-4(e).

## II. *Manifest Injustice*

[13] "Manifest injustice" is "necessarily [an] imprecise standard[], and an appellant seeking to overturn a trial court's decision [faces] a high hurdle under the current statute and its predecessors." *Craig* 883 N.E.2d at 221 (quoting *Weatherford*, 697 N.E.2d at 34). Pursuant to Indiana Code section 35-35-1-4(c), withdrawal of a plea is required to correct a manifest injustice, in pertinent part, when a convicted person has been denied the effective assistance of counsel or when a plea was not knowingly and voluntarily made. "Unless the defendant proves a manifest injustice by a preponderance of the evidence, the trial court has discretion to grant or deny the request." *Bland v. State*, 708 N.E.2d 880, 882 (Ind. Ct. App. 1999). On appeal, Kaushal argues that his plea must be withdrawn because his plea was not knowing and voluntary and because he was denied the effective assistance of counsel.

### A. *Knowing, Voluntary, and Intelligent Plea*

[14] Kaushal contends that he "presented uncontroverted evidence that he had grossly misapprehended the immigration consequences of his guilty plea. The disparity between what he expected when he pled guilty and what he would receive as an immigration consequence is such that his decision to plead guilty was not made knowingly and intelligently." (Appellant's Br. pp. 14-15).[2]

---

[2] We reject the State's assertion that Kaushal is precluded from raising the claim that he did not knowingly or intelligently plead guilty because such a claim must be pursued through a petition for post-conviction relief. A motion to withdraw a plea made *after* a sentence has been imposed must be treated as a petition for post-conviction relief. I.C. § 35-35-1-4(c). Here, however, Kaushal filed his motion to withdraw after acceptance of the plea but prior to sentencing. Thus, his direct appeal is the appropriate forum to challenge

Because "[a] guilty plea constitutes a waiver of constitutional rights," the trial court must "evaluate the validity of every plea before accepting it." *Davis v. State*, 675 N.E.2d 1097, 1102 (Ind. 1996). In order for a guilty plea to be valid, "the defendant's decision to plead guilty must be knowing, voluntary[,] and intelligent." *Id.* (citing *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969)). Indiana law provides that a trial court cannot accept a guilty plea "without first determining that the defendant understands the nature of the charges against him and that pleading guilty waives a number of valuable constitutional rights." *Id.* (citing I.C. § 35-35-1-2(a)). "[C]oncerns about injustice carry greater weight when accompanied by credible evidence of involuntariness, or when the circumstances of the plea reveal that the rights of the accused were violated." *Coomer*, 652 N.E.2d at 62.

[15] Prior to accepting Kaushal's guilty plea, the trial court examined Kaushal in accordance with Indiana Code section 35-35-1-2(a). Specifically, in response to questions posed by the trial court, Kaushal testified that he was thirty-four years old and had completed "a little bit of college." (Tr. Vol. II, p. 5). The trial court asked Kaushal whether he had read the entire plea agreement; whether he had personally initialed the agreement next to certain paragraphs in the agreement; and whether he understood everything in the plea agreement. Kaushal answered "Yes, sir" to each of these questions. (Tr. Vol. II, p. 5). The

---

the voluntariness of his guilty plea. *See Brightman*, 758 N.E.2d at 44. As to the State's alternative argument, to the extent that Kaushal has not developed a cogent argument with adequate citations to authority as required by Indiana Appellate Rule 46(A)(8)(a), we elect to address the merits of Kaushal's argument.

trial court further questioned Kaushal as to whether he understood that he would be admitting the allegations contained in the charging Information as true and—after reviewing the penalty range for a Level 4 felony, the sentencing terms of the plea agreement, the requirement that he register as a sex offender, and the special conditions for probation—asked Kaushal whether he understood the punishment. Again, Kaushal answered affirmatively. Kaushal also stated that he understood that he would be waiving his right to a public and speedy trial by jury; his right to confront and cross-examine witnesses; his right to utilize the compulsory process for obtaining witnesses; his right to require the State to prove the allegations beyond a reasonable doubt; his rights to testify or remain silent at trial; and his right to appeal the conviction. Kaushal agreed that he "had enough time to talk with [his] attorney . . . about the facts of the case and the plea agreement itself" and that he had "told [his attorney] everything that [he knew] about the case." (Tr. Vol. II, p. 10). Kaushal stated that he was satisfied with the legal services that his attorney had provided. Finally, Kaushal stated that he was not pleading guilty because of force, threat, or promise by another; that he was not under the influence of alcohol or drugs; and that he did not suffer from any mental health issues. *See Coomer*, 652 N.E.2d at 62 (discussing the trial court's duty to examine a defendant prior to accepting the defendant's guilty plea to confirm that the defendant is acting freely and knowingly).

[16] Although the trial court did not specifically question Kaushal about his understanding of potential immigration consequences, he did ensure that

Kaushal read and understood the contents of the plea agreement in their entirety. One paragraph of the plea agreement, which Kaushal initialed, stipulated: "Defendant affirms that if he/she is not a citizen of the United States, he/she wishes to enter a guilty plea even if a conviction in this case results in deportation, denial of re-entry, prohibition of citizenship, or loss of any future immigration benefit(s)." (Appellant's Supp. App. Vol. II, p. 15). Accordingly, we agree with the trial court that Kaushal knowingly, voluntarily, and intelligently entered a guilty plea and, therefore, has failed to prove a manifest injustice on this basis.

### B. *Ineffective Assistance of Counsel*

Kaushal next contends that withdrawal of his guilty plea is necessary to correct a manifest injustice because his trial counsel rendered ineffective assistance by failing to advise him of the specific immigration consequences that he would incur by pleading guilty to a felony charge of child molestation. To prevail on a claim of ineffective assistance of counsel, a defendant must establish that his counsel's performance was deficient and that such deficient performance resulted in prejudice to the defendant. *Brightman*, 758 N.E.2d at 46. Deficient performance is defined as that which "falls below an objective standard of reasonableness." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Prejudice exists when a defendant shows 'there is a reasonable probability [i.e., probability sufficient to undermine confidence in the outcome] that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (alteration in original) (quoting *Strickland*, 466 U.S. at 694).

Our court presumes that counsel rendered competent assistance, "and whether a lawyer performed reasonably under the circumstances is determined by examining the whole of the lawyer's work on a case." *Id.* (citing *Strickland*, 466 U.S. at 690). The defendant is required to "offer strong and convincing evidence to overcome the presumption that counsel prepared and executed an effective defense." *Id.* (citing *Burris v. State*, 558 N.E.2d 1067, 10720 (Ind. 1990), *cert. denied*, 516 U.S. 922 (1995)).

[18] Kaushal argues that

> [t]he evidence of ineffective assistance of counsel by [his trial attorney] is overwhelming. He failed to correctly advise Kaushal of the immigration consequences of his plea, which by [federal] statute are presumptive detention and deportation. [The attorney's] immigration advice that Kaushal's [G]reen [C]ard would not be renewed, as well as the agreed sentence of three years of home detention while on probation, caused Kaushal to grossly mistake the severity and immediacy of the immigration consequences he would face.

(Appellant's Br. p. 16). Kaushal insists that he "would not have waived [his] trial rights had he not been grossly misinformed and misled by ineffective counsel as to the severe immigration consequences of his guilty plea." (Appellant's Br. p. 23). On the other hand, the State argues that Kaushal was aware of the immigration consequences prior to pleading guilty and now simply regrets his decision.

[19] In *Segura v. State*, 749 N.E.2d 496, 500 (Ind. 2001), our supreme court stated that "the failure to advise of the consequence of deportation can, under some

circumstances, constitute deficient performance [of counsel]." Whether such a failure to advise does actually constitute deficient performance "in a given case is fact sensitive and turns on a number of factors. These presumably include the knowledge of the lawyer of the client's status as an alien, the client's familiarity with the consequences of conviction, the severity of criminal penal consequences, and the likely subsequent effects of deportation." *Id*. Recently, our court stated:

> Defense attorneys have an obligation to advise their clients regarding the possible penal consequences of standing trial. One of the most important roles a defense attorney plays is to help clients navigate this complex decision-making process. It is incumbent upon the attorney to describe the best and worst case scenarios as to penal consequences the client would face whether the client pleads guilty, with or without a plea agreement, or stands trial.

*Black v. State*, 54 N.E.3d 414, 427 (Ind. Ct. App. 2016), *trans. denied*. Likewise, our court "caution[ed]" in *Carrillo v. State*, 982 N.E.2d 468, 474-75 (Ind. Ct. App. 2013) (citing *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010)), that while "it would be proper for the judiciary to play a part in ensuring that noncitizen defendants are adequately advised of the immigration consequences of guilty pleas," "it would still be incumbent upon the defendant's attorney to accurately inform the noncitizen defendant of the deportation consequences of pleading guilty where they can be easily determined from reading the relevant immigration statute." However, "'[w]hen the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a

noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.'" *Id.* at 475 (ellipsis in original) (quoting *Padilla*, 559 U.S. at 369).

[20] In *Segura*, the defendant accused his trial counsel of being ineffective for—as in the present case—failing to advise him of the immigration consequences prior to pleading guilty. *Segura*, 749 N.E.2d at 500. However, the *Segura* court did not address the deficiency of counsel's performance because it found that, even if counsel's performance was deficient, the defendant had failed to prove that he had been prejudiced. *Id.* The *Segura* court set the standard for establishing prejudice in cases concerning counsel's errors in advice as to penal consequences:

> [A] petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead. Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.

*Id.* at 507.

[21] In *Gulzar v. State*, 971 N.E.2d 1258, 1259-60 (Ind. Ct. App. 2012), *trans. denied*, after pleading guilty and being sentenced for felony theft, the defendant—an immigrant from Pakistan—filed a petition for post-conviction relief, asserting that he had received ineffective assistance of trial counsel. Similar to the case at

hand, the attorney in *Gulzar* did inform the defendant that the guilty plea could affect his immigration status but did not specify that the conviction would subject him to automatic deportation. *Id.* at 1260. The defendant claimed that his counsel's failure to explain the risk of deportation was prejudicial because he would have otherwise rejected the plea agreement. *Id.* at 1261. Our court noted that "[s]imply alleging that the [defendant] would not have pled [guilty]" was insufficient to establish that the defendant has been prejudiced by any error in counsel's failure to advise the defendant of penal consequences. *Id.* Rather, "specific facts, in addition to the [defendant's] conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the [defendant] not to enter a plea." *Id.* The defendant in *Gulzar* argued that deportation "would be especially difficult for him and [his nuclear family]." *Id.* Notwithstanding these "special circumstances related to his family," our court found that "the evidence establishing his guilt" supported a finding that, "at the end of the day, the inevitable result is conviction and the same sentence." *Id.* at 1262. Furthermore, the defendant "secure[d] a significant benefit by reducing his liability" through the guilty plea. *Id.* Thus, we found the defendant failed to establish that he was prejudiced by his counsel's failure to advise him that a guilty plea would result in automatic deportation. *Id.*

[22] In the present case, assuming *arguendo* that his attorney's failure to specifically advise Kaushal of the immediate possibility of deportation was deficient, we find that certain factors do favor a finding that Kaushal was prejudiced.

Although Kaushal's appellate brief is devoid of any argument regarding special circumstances that would support a conclusion that he would not have pled guilty absent the faulty advice of his attorney,[3] his motion to withdraw contends that he pled "guilty in order to avoid prison without having knowledge that his ability to legally reside in the United States would end. Kaushal owns several businesses and considers the United States to be his home. Although he has [pled] guilty, Kaushal maintains his innocence and wishes to proceed to trial." (Appellant's App. Vol. II, p. 16). In addition, evidence elicited during the hearing on Kaushal's motion to withdraw indicates that Kaushal takes care of his mother. Kaushal's ties to this country—namely his business and his mother—are "special circumstances" that could support a finding that Kaushal was prejudiced by his attorney's failure to adequately advise him of the penal consequences of his plea. *See Gulzar*, 971 N.E.2d at 1261. Moreover, we note that the factual basis set forth by the State to support Kaushal's guilty plea simply provided that "on August 8, 2015, . . . Kaushal did perform or submit to fondling or touching with M.S., a child under the age of [fourteen] years, specifically [thirteen] years, with the intent to arouse or satisfy the sexual desires of . . . Kaushal or M.S. All of that occurred in Marion County and is contrary to the laws of the State of Indiana." (Tr. Vol. II, p. 13). This 'factual basis' amounts more to a recitation of the elements necessary to prove the

---

[3] Rather, Kaushal's argument focuses on accusing his trial counsel of collecting his fee and then "urgent[ly]" advising a reluctant Kaushal to plead guilty in order to avoid having to prepare for a trial. (Appellant's Br. p. 20). We find Kaushal's claims regarding the efforts of his counsel to be irrelevant to the matter of whether Kaushal received ineffective advice as to the penal consequences of pleading guilty.

offense rather than a statement of facts to prove those elements. Thus, unlike in *Gulzar*, we can hardly say that there is *overwhelming* evidence of his guilt such that the ultimate result would have likely been the same regardless of whether Kaushal pled guilty or proceeded to trial.

[23] Nevertheless, Kaushal undoubtedly received a substantial benefit by pleading guilty, as he received an entirely suspended sentence for an offense that carries a possible term of incarceration of two to twelve years. *See* I.C. § 35-50-2-5.5. Furthermore, Kaushal's counsel testified that he informed Kaushal, prior to pleading guilty, that Kaushal's Green Card would not be renewed, and when he reviewed the contents of the plea agreement with Kaushal, including the paragraph indicating a risk of deportation, Kaushal affirmed his understanding. Moreover, the trial court confirmed that Kaushal had read, understood, and signed the provision of the plea agreement discussing the possibility of deportation. *See Barajas v. State*, 987 N.E.2d 176, 181 (Ind. Ct. App. 2013) (finding that even if trial counsel had performed below prevailing professional norms by failing to explain the potential immigration consequences of pleading guilty, the defendant was not prejudiced because the trial court explained that his guilty plea could possibly result in deportation). In addition, Kaushal conceded that he was aware that he would face hurdles with respect to his immigration status, despite his mistaken belief that he would have the time and ability to appeal any immigration consequences with immigration officials, but he was apparently willing to accept those risks in order to avoid spending any amount of time incarcerated. Thus, although his attorney did not advise of the

specific immigration consequences, it is clear that Kaushal was advised of the possibility that he would be deported if he pled guilty but chose to do so regardless. Accordingly, because he has failed to establish that he was prejudiced by his attorney's performance, he has not proven that the withdrawal of his guilty plea was necessary to correct a manifest injustice. Therefore, the trial court had discretion to deny Kaushal's motion to withdraw his guilty plea.

## CONCLUSION

[24] Based on the foregoing, we conclude that the trial court acted within its discretion in denying Kaushal's motion to withdraw his guilty plea.

[25] Affirmed.

[26] Najam, J. and Bradford, J. concur