## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 16 2018, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Derick W. Steele
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremy Fletchall,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 16, 2018

Court of Appeals Case No.
34A02-1712-CR-2976

Appeal from the Howard Superior Court

The Honorable William C. Menges, Jr., Judge

Trial Court Cause Nos.
34D01-1308-FB-643
34D01-1501-F6-11

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Jeremy Fletchall (Fletchall), appeals the trial court's revocation of his probation and imposition of his previously suspended sentences.

We affirm.

# ISSUE

Fletchall presents one issue on appeal, which we restate as: Whether Fletchall was properly advised of the terms of his probation before he was found to have violated his probation for the second time.

# FACTS AND PROCEDURAL HISTORY

On August 23, 2013, the State charged Fletchall with three Counts of Class B felony dealing in a narcotic drug and two Counts of Class B felony dealing in a schedule II controlled substance in Cause No. 34D01-1308-FB-643 (FB-643). One Count of Class B felony dealing in a schedule II controlled substance was later dismissed. On January 7, 2015, while Fletchall was out on bond on FB-643, the State filed another Information, charging him with two Counts of Level 6 felony theft in Cause No. 34D01-1501-F6-11 (F6-11).

On April 22, 2015, Fletchall entered into a plea agreement in both Causes, pleading guilty to three Counts of Class B felony dealing in a narcotic drug in FB-643 and to both Counts of Level 6 felony theft in F6-11. That same day, the trial court sentenced him to concurrent terms of 15 years, with 10 years

executed and 5 years suspended for each of his offenses in FB-643. In F6-11, Fletchall was sentenced to concurrent terms of 913 days for each of his offenses. The trial court ordered the sentences in both Causes to run consecutively to each other, and verbally advised Fletchall:

> As a specific condition of his probation he shall follow any and all recommendations made by the [p]robation [d]epartment concerning education or treatment, further that as a specific condition of his probation he shall attend, complete and pay for the Drug and Alcohol Program. . . . . As a further specific condition of his probation he shall make restitution to the Kokomo Police Department in the sum of $480.

(Suppl. Transcript Vol. II, p. 12). As part of its sentencing order, the trial court enumerated the following specific conditions of Fletchall's probation:

> Successfully attend, complete and pay for the Howard County Drug and Alcohol Program and/or such other program as may be from time to time designated by the Howard County Drug and Alcohol Program. As further specific conditions of probation, [Fletchall] is ordered to follow any and all recommendations made by the [p]robation [d]epartment including, but not limited to, treatment and education. As further specific conditions of probation, [Fletchall] is ordered to pay restitution to the Kokomo Police Department . . . It is recommended that [Fletchall] be placed in a Therapeutic Community Program while incarcerated in the Indiana Department of [C]orrection. Upon successful completion of said program, the [c]ourt will consider modifying his sentence, so as to reduce the total time of incarceration.

(Appellant's App. Vol. II. p. 11).

[6]     On May 9, 2016, Fletchall's sentence in both Causes was modified to allow him to serve the balance of his suspended sentence on electronic monitoring and day reporting and/or re-entry court supervision through Community Corrections. On May 27, 2016, Fletchall entered into a re-entry court program participation agreement. This agreement, signed by Fletchall, provided him with all the terms and conditions of the re-entry program and noted, in relevant part:

> 8. If Participant is terminated from the [re-entry] [p]rogram while on the Community Transition Program they will be returned to the Department of Correction[]. If Participant is on probation they will be referred to the sentencing court for final disposition and if they are on parole they will be referred to the parole board for final disposition.

(Appellant's App. Vol. III, pp. 5-6).

[7]     On November 9, 2016, the State filed a petition to revoke Fletchall's suspended sentence in both Causes when he was found to have violated the rules of the re-entry court program after testing positive for morphine and by leaving the program. As a result, Fletchall was terminated from the program. The trial court conducted a hearing on the State's petition on March 21, 2017, and after Fletchall admitted to the allegations, the trial court revoked his probation. The trial court ordered Fletchall to serve 548 days of his previously-suspended sentence in FB-643 and in F6-11, the trial court ordered him to return to probation "with all the previous terms and conditions to remain in full force and effect," after completing his sentence in FB-643. (Appellant's App. Vol. II, p. 32).

[8] On July 11, 2016, Fletchall signed specific conditions of home detention, which specified, in pertinent part:

> 6. I agree to limit my movement away from my house to involve only traveling to and from work. All other deviations must be pre-approved by the Community Corrections staff. If I am found to be away from my residence without prior permission from a Staff Member, I may be accused of escape. **In case of a medical emergency, I agree to contact the Home Detention Staff as quickly as possible and show proof that it was in fact a medical emergency.** Further, I understand that any attempt on my behalf to falsify information which will result in or has in fact resulted in a deviation from my schedule, will result in a violation being filed with the Prosecutor's office.
>
> * * * *
>
> 27. I understand all of the above conditions and agree to comply with each provision. I understand that if I am found to be in violation of any of the aforementioned conditions, I may be subject to sanctions which may include loss of errand time, forfeiture of good time credit or possibl[y] jail.

(Appellant's App. Vol. III, pp. 23, 26).

[9] On July 18, 2017, Fletchall entered into a second re-entry court program participation agreement, which cautioned Fletchall that if he was terminated from the re-entry program, he would be returned to the Department of Correction or, if on probation, to the trial court for final disposition. In addition to the agreement, Fletchall was handed the re-entry handbook which contained all the conditions and sanctions of the programs. However, barely a

month later, on August 23, 2017, a second notice of termination from the re-entry program was filed in both Causes because Fletchall was not in a place where he had permission to be. After being terminated from the re-entry program, the State filed a petition to revoke Fletchall's suspended sentence in both Causes on October 12, 2017. During the fact-finding hearing on the State's petition on November 21, 2017, Fletchall acknowledged that he had to follow certain rules with the re-entry program and admitted that he was out more than three hours running errands in violation of the program requirements. The trial court concluded that Fletchall had violated the terms of his probation and revoked his probation. Fletchall was ordered to serve the entire balance of his previously-suspended sentence in both Causes.

[10] Fletchall now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[11] Fletchall contends that the trial court abused its discretion in finding him in violation of his probation because the trial court had failed to advise him of the terms of his probation. Probation is a matter of grace left to the trial court discretion, not a right to which a criminal defendant is entitled. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). The trial court determines the conditions of probation and may revoke probation if conditions are violated. *Id*. Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. *Id*. If this discretion were not afforded to the trial court and sentences were scrutinized too severely on appeal, trial courts might be less inclined to order

probation to future defendants. *Id.* Accordingly, a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. *Id.* An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[12] Whenever the trial court places a person on probation, the court must specify on the record the conditions of the probation and give the person a written statement specifying his conditions of probation. Ind. Code §§ 35-38-2-1; -2.3. "Thus, the law generally requires that if a person is placed on probation, the trial court must provide the defendant a written statement containing the terms and conditions of probation at the sentencing hearing." *Gil v. State*, 988 N.E.2d 1231, 1234 (Ind. Ct. App. 2013). However, we have previously held that the trial court's failure to provide written probation terms may be harmless error if the defendant has been orally advised of the conditions and acknowledges that he understands them. *Id.*

[13] Nevertheless, during the trial court's hearing on the State's petition to revoke Fletchall's probation, Fletchall never presented the argument that he had not been advised of the conditions of probation. It is well settled that a party may not present an argument or issue to an appellate court unless the party raised the same argument or issue before the trial court. *See Craig v. State*, 883 N.E.2d 218, 220 (Ind. Ct. App. 2008). Therefore, Fletchall waived his claim.

[14] Furthermore, Indiana Appellate Rule 46(A)(8)(a) mandates that the argument section of an appellate brief should contain the contentions of the appellant

supported by cogent reasoning and with reference to the appropriate authorities and record. Not counting the standard of review, Fletchall's entire argument is two sentences long, with another two sentences repeating what has already been stated. The argument is coached in general terms—"the failure to have written, signed rules of probation is fatal"—and fails to assert which proceeding Fletchall is referring to, which probation terms he was not advised about, or which were unclear. (Appellant's Br. p. 7). Accordingly, Fletchall waived his claim.

[15] Notwithstanding these waivers, a review of the record discloses that Fletchall was apprised of his terms of probation, signed specific conditions of home detention, signed two re-entry court program participation agreements, and acknowledged during the hearing that he had violated the conditions of his probation. Therefore, as Fletchall was repeatedly advised of his probation conditions, we affirm the trial court's revocation of his probation.

## CONCLUSION

[16] Based on the foregoing, we hold that the trial court did not abuse its discretion in revoking Fletchall's probation and ordering him to serve the balance of his previously suspended sentence.

Affirmed.

May, J. and Mathias, J. concur