

FILED

Oct 05 2018, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

H. Samuel Ansell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Larry D. Allen
Monika P. Talbot
Deputy Attorneys General
Indianapolis, Indiana

# I N T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Umesh Kaushal, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 5, 2018 <br><br> Court of Appeals Case No. <br> 49A04-1612-CR-2862 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Sheila Carlisle, Judge <br><br> The Honorable Stanley E. Kroh, Magistrate <br><br> Trial Court Cause No. <br> 49G03-1508-F4-28287 |

**Riley, Judge.**

## OPINION ON REMAND

[1]    This case is before us on remand from the United States Supreme Court. In *Kaushal v. State*, No. 49A04-1612-CR-2862, 2017 WL 3028623 (Ind. Ct. App. July 18, 2017), this court affirmed the trial court's denial of Kaushal's motion to withdraw his guilty plea which was based in part upon a claim that his guilty plea counsel had been ineffective. The Indiana Supreme Court denied his petition for transfer, and Kaushal subsequently filed a petition for writ of certiorari with the United States Supreme Court. On June 28, 2018, the Supreme Court granted the certiorari petition and remanded this case "for further consideration in light of *Jae Lee v. United States*, 582 U.S. ___ [, 137 S. Ct. 1958] (2017)." *Kaushal v. Indiana*, 138 S. Ct. 2567 (2018). Accordingly, we reconsider Kaushal's appeal.

[2]    The facts of the case as set out by this court in its original opinion are as follows:

> Kaushal, a citizen of India, has lived in the United States for nearly a decade and has a Green Card. On August 11, 2015, the State filed an Information, charging Kaushal with child molesting as a Level 4 felony. The State alleged that Kaushal had fondled his thirteen-year-old stepdaughter's breast. Shortly after his arrest, Kaushal posted bond and retained an attorney. Kaushal, who owns and operates several convenience stores in Indianapolis, Marion County, Indiana, made it clear to his attorney that his priority was to avoid any amount of incarceration so that he could continue to run his businesses and care for his mother. Given Kaushal's insistence against imprisonment, along with his professional opinion that Kaushal was not likely to succeed at trial, Kaushal's attorney focused on negotiating a deal with the State.

On May 4, 2016, Kaushal entered into a plea agreement with the State, pursuant to which he agreed to plead guilty to the child molesting offense. The agreement provided that Kaushal would receive a four-year sentence, with a one-year cap on executed time and with placement for the executed time to be determined by the trial court. However, after conferring with his attorney and realizing that he could be confined for a portion of his sentence, Kaushal withdrew from the plea agreement.

On June 29, 2016, Kaushal entered into another plea agreement with the State, pursuant to which he again agreed to plead guilty to the offense of child molesting as a Level 4 felony. In exchange, Kaushal would receive a four-year suspended sentence, of which three years would be served on probation with a condition of home detention and one year on non-reporting probation. On June 30, 2016, the trial court conducted a hearing on Kaushal's guilty plea. The trial court advised Kaushal of the implications of pleading guilty, including his obligation to comply with the Sex and Violent Offender Registry; his waiver of his right to appeal his conviction and/or sentence; and his waiver of certain constitutional rights, such as the right to a trial by jury and the right to confront and cross-examine witnesses. These warnings were also included in the written plea agreement, and Kaushal initialed next to each one to affirm his understanding. Also, among the written warnings was an advisement that, as a non-citizen, Kaushal could face deportation, denial of re-entry, prohibition of citizenship, or loss of immigration benefits as a result of the conviction. After questioning Kaushal, the trial court found that his guilty plea was made knowingly and voluntarily, and Kaushal agreed that there was a factual basis to support his conviction and that he was guilty of committing the charged offense. Accordingly, the trial court accepted the plea agreement and entered a judgment of conviction for child molesting as a Level 4 felony.

According to Kaushal, on July 1, 2016, he met with an attorney who focuses on immigration matters and learned that, as a result of his conviction for child molesting, he was likely to be immediately "picked up" by immigration officials. Thus, on July 21, 2016, Kaushal filed a Verified Motion to Withdraw Plea of Guilty. Kaushal argued that "[o]utside of a vague advisement that the conviction may have immigration consequences, [he] was not advised of potential immigration consequences and would not have pled guilty to the charged crime had he known it would subject him to automatic detention, revocation of his permanent resident status, and certain deportation." Kaushal further stated that he pled guilty "in order to avoid prison without having knowledge that his ability to legally reside in the United States would end. Kaushal owns several businesses and considers the United States to be his home. Although he has [pled] guilty, Kaushal maintains his innocence and wishes to proceed to trial." Kaushal added that withdrawing the plea would not prejudice the State because the case could still proceed to trial, and he insisted that withdrawal was necessary to correct a manifest injustice.

On August 5, 2016, and September 9, 2016, the trial court held hearings on Kaushal's motion to withdraw his guilty plea. Kaushal testified that his attorney never discussed the immigration consequences in urging Kaushal to plead guilty. Yet, in response to another question about conversations with his attorney regarding his Green Card, Kaushal also stated, "I think I'm not going to be ever U.S. citizen, or I'm never going to be deported after, like—in that quick until I—I just find immigration stuff." Kaushal clarified that, while he understood there would be "a hard road after" pleading guilty, he did not realize "that it's going to be that hard—[that he would get] deported that quick." On the other hand, Kaushal's attorney testified that he went through each paragraph of the plea agreement with Kaushal, including the paragraph regarding possible immigration consequences, and Kaushal did not have any questions as to what he was signing. Moreover, Kaushal's attorney testified that

Kaushal had informed him that he was contemporaneously conferring with immigration attorneys. Although Kaushal's attorney stated that he does not practice immigration law, he specifically told Kaushal that his Green Card would not be renewed prior to Kaushal signing the plea agreement.

On November 7, 2016, the trial court issued an Order Denying Verified Motion to Withdraw Guilty Plea. The trial court determined that even though the State had conceded that Kaushal's attorney ineffectively advised Kaushal on the immigration consequences of pleading guilty, Kaushal failed to establish that he was prejudiced by his attorney's advice. On December 2, 2016, Kaushal filed a motion to correct error, which the trial court denied on December 15, 2016.

*Kaushal*, 2018 WL 3028623, at *1-2 (record citations and internal footnote omitted). Additional facts will be provided as necessary.

The issue relevant to our review on remand is whether, in light of *Jae Lee*, Kaushal adequately established that he was prejudiced by his counsel's deficient performance such that his guilty plea must be set aside.

We affirm.

## DISCUSSION AND DECISION

In our original opinion, we did not address the issue of whether Kaushal's counsel's performance was deficient because we concluded that, regardless, Kaushal had not demonstrated that he had been prejudiced by his counsel's performance. *Id*. at *6. We began our analysis by setting out the general

*Strickland* standard for assessing prejudice, namely that a defendant must establish that, but for his counsel's error, the result of the proceeding would have been different. *Id*. at *4. Relying upon *Segura v. State*, 749 N.E.2d 496, 500 (Ind. 2001), and *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 20012), *trans. denied*, for the standard for assessing prejudice more specifically in the context of counsel's failure to warn a defendant of penal consequences, including immigration consequences, prior to entering a guilty plea, we noted that "'specific facts, in addition to the [defendant's] conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the [defendant ] not to enter a plea.'" *Id*. at *5 (quoting *Gulzar*).

[6] We considered Kaushal's ties to the United States and the scant factual basis in the record for his guilty plea, which we noted militated in favor of finding prejudice. *Id*. at *6. However, we held that the substantial benefit Kaushal received from his plea, evidence of his knowledge before entering his plea that his Green Card would not be renewed, his review of his plea agreement with counsel and the trial court prior to entering his plea, and his concession at an evidentiary hearing on his motion that he knew that he would "face hurdles" with his immigration status after entering his plea all established that Kaushal knew that his immigration status could be affected by his plea but that "he was apparently willing to accept those risks in order to avoid spending any amount

of time incarcerated." *Id*. We concluded that Kaushal had not demonstrated adequate prejudice because he had been advised of the possibility that he could be deported if he pled guilty but chose to plead guilty anyway. *Id*.

[7] After briefing was completed in this matter but before our decision was handed down, the United States Supreme Court decided *Jae Lee*, in which it clarified the standards for assessing prejudice in cases where a defendant relied upon his counsel's deficient performance in deciding to forgo trial and to instead enter a guilty plea. Kaushal sought rehearing, arguing that *Jae Lee* afforded him relief. (Appellant's Petition for Rehearing pp. 6-9). After considering *Jae Lee*, we denied Kaushal's petition for rehearing. Kaushal's subsequent petition for transfer to our supreme court also cited *Jae Lee*. (Petition to Transfer pp. 5-7). Our supreme court also denied relief.

[8] Lee, a longtime lawful permanent resident of the United States, was charged with one count of possessing ecstasy with intent to distribute, an offense that, if he were convicted, would subject him to mandatory deportation. *Lee*, 137 S. Ct. at 1962-63. Lee had admitted that the drugs found in his home were his and that he had given ecstasy to his friends. *Id*. at 1963. His counsel advised him that his chances of success at trial were slim but that he would not be deported if he pled guilty and served his sentence. *Id*. After pleading guilty and being sentenced, Lee learned that he was subject to mandatory deportation following his conviction. *Id*. Lee sought relief from his conviction and sentence based upon a claim that his guilty plea counsel was ineffective. *Id*.

[9]     In its decision granting that relief, the Supreme Court clarified that a defendant alleging that his counsel's deficient performance led him to enter a guilty plea in lieu of going to trial must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 1965 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Courts reviewing such claims do not focus on the defendant's chances of success at some hypothetical trial. *Id*. at 1967. Rather, it must be determined whether the defendant made an adequate showing that, if properly advised, he would have elected to go to trial. *Id*. The focus is on the defendant's decisionmaking, which may not be based solely upon the likelihood of conviction. *Id*. at 1966. In order to establish prejudice, a defendant may not rely merely on *post hoc* claims that he would not have pled guilty had he been better advised. *Id*. at 1967. Rather, he must substantiate his claim that he would not have pled guilty with contemporaneous evidence. *Id*.

[10]    Under what it characterized as "the unusual circumstances" of Lee's case, the Court held that Lee had established adequate prejudice because the record reflected a reasonable probability that, but for his counsel's errors, Lee would have insisted on going to trial. *Id*. at 1967-68. Prior to accepting his plea, Lee asked his counsel repeatedly whether he would be deported following his guilty plea. *Id*. at 1967. At his guilty plea hearing, Lee was confused and sought the advice of his counsel when the trial court warned him as part of his plea colloquy that he could be deported as a result of his conviction. *Id*. at 1968. In addition, at an evidentiary hearing, both Lee and his attorney testified that

avoiding deportation was the determinative factor for Lee in deciding to plead guilty and that Lee would have gone to trial had he known about the deportation consequences of his decision to plead guilty. *Id*. at 1967-68. The Court also noted that Lee had strong connections to the United States, having resided here for over thirty years, having established two businesses, and having been the sole family caretaker for his elderly parents. *Id*. at 1968. The Court reasoned that for defendants like Lee, whose primary goal is to avoid deportation, it may be worth the risk of going to trial despite a low chance of success rather than plead guilty and face certain deportation. *Id*. at 1968-69. The Court noted that "[n]ot everyone in Lee's position would make the choice to reject the plea. But we cannot say it would be irrational to do so." *Id*. at 1969.

[11] In addressing the case at hand, we begin by noting that Kaushal has lived in the United States for approximately ten years, owns several businesses, cares for his mother, and now insists that he would not have pled guilty had he known he would be deported. However, we cannot conclude that these circumstances alone establish a reasonable probability that, but for his counsel's performance, he would have insisted on going to trial. *See id*. at 1965. The contemporaneous evidence in the record reflects that avoiding imprisonment, not deportation, was the determinative issue for Kaushal in resolving his criminal case and

ultimately deciding to enter a guilty plea.[1] Some of the evidence which illustrates this is that at one of the evidentiary hearings in this matter, Kaushal's counsel testified that "Mr. Kaushal's first goal, in my opinion, always was that he didn't want to go to prison" and "The whole thing was him not going to jail was – was what he wanted the whole time in my office. He didn't want to spend one day in jail . . . was his major . . . number one." (Transcript Vol. 2, pp. 53, 96). Kaushal testified at a hearing in this matter that he pled guilty because he was afraid of going to prison and that "It's all about I'm scared to go to prison." (Tr. Vol. 2, pp. 28, 35).

[12] Apart from this testimony, Kaushal's actions before seeking to set aside his plea affirm that avoiding prison was his primary objective in resolving his criminal case. Kaushal withdrew from his first plea agreement because he would have been required to execute a portion of his sentence in prison. Kaushal signed his second plea agreement which provided for an entirely-suspended sentence after being advised by his guilty plea counsel that his Green Card would not be renewed and after he had reviewed the paragraph in his plea agreement pertaining to possible immigration consequences. Unlike Jae Lee, Kaushal exhibited no confusion about the terms of his plea agreement during his plea

---

[1] The contemporaneous evidence relied upon in *Jae Lee* was uncontroverted. *Id*. at 1968-69. Inasmuch as any of the evidence we rely upon in reaching our decision was disputed, we note that we do not disturb the trial court's ruling on a motion to set aside a guilty plea simply because it was based upon conflicting evidence. *Weatherford v. State*, 697 N.E.2d 32, 34 (Ind. 1998).

colloquy. Rather, he confirmed to the trial court that he had read the plea agreement and understood it.

[13] Kaushal was aware prior to entering his guilty plea that he faced a "hard road" regarding his immigration status if he pled, (Tr. Vol. 2, p. 29), but the record simply does not reflect that deportation was an overriding concern for him in deciding whether to plead guilty or to go to trial. Unlike Jae Lee, whose chances of achieving his ultimate goal of avoiding deportation were increased by going to trial, Kaushal had no increased chance of achieving his ultimate goal of avoiding prison by going to trial. Rather, the opposite is true because his plea agreement guaranteed that he would not be imprisoned.

[14] The contemporaneous evidence in the record does not establish a reasonable probability that, but for his counsel's errors, Kaushal would not have pled guilty and would have insisted on going to trial. *Lee*, 137 S. Ct. at 1965. We conclude that Kaushal did not establish, even in light of *Jae Lee*, that he was prejudiced by his counsel's performance. As such, the trial court did not err in declining to set aside his guilty plea.

[15] Affirmed.

[16] Najam, J. and Bradford, J. concur